UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY BERNARD GREEN,<br><br>                                   Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                                  Respondent. | Case No.:  18-CR-2249-AJB<br>**ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>**(Doc. No. 61)** |

Petitioner Corey Bernard Green ("Green") moves under 28 U.S.C. § 2255 ("Section 2255") to Vacate, Set Aside, or Correct his Sentence on the basis of ineffective assistance of counsel ("Section 2255 Petition"). (Doc. No. 61.) The United States opposes the Section 2255 Petition. An evidentiary hearing was held by the Court on May 19, 2021. (Doc. No. 118.) For the reasons discussed in detail below, the Court **DENIES** Green's Section 2255 Petition.

## I.    BACKGROUND

A Complaint was filed against Green on March 14, 2018, for the knowing and intentional distribution of a mixture and substance containing fentanyl, which resulted in death, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Doc. No. 1.) On April 10, 2018, Green was arrested, and Federal Defenders was appointed as counsel. (Doc. No. 9.) On April 11, 2018, Elizabeth M. Barros of Federal Defenders filed a notice of appearance in the matter. (Doc. No. 13.) On May 8, 2018, Green waived prosecution by Indictment,

and an Information was filed against Green for the knowing and intentional distribution of a mixture and substance containing fentanyl, which resulted in death, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Doc. No. 18.) That same day, Green was arraigned, and entered a plea of not guilty. (Doc. No. 20.) Then, on May 25, 2018, Caitlin E. Howard with Federal Defenders appeared as co-counsel for Green. (Doc. No. 22.) On October 31, 2018, a Superseding Information was filed against Green for knowingly and intentionally distributing a mixture and substance containing fentanyl, in violation of 21 U.S.C. § 841 (a)(1). (Doc. No. 31.) Importantly, the Superseding Information removed the charge under 21 U.S.C. § 841(b)(1)(C) for the knowing and intentional distribution of a mixture and substance containing fentanyl, resulting in death. (*Id.*) The same day, Green tendered a guilty plea on Count 1 of the Superseding Information. (Doc. Nos. 33–36.) As a result, on April 5, 2019, Green was sentenced to 151 months in custody. (Doc. No. 49.) Green filed a Section 2255 Petition on March 31, 2020. (Doc. No. 61.) An evidentiary hearing was held on May 19, 2021, in which Green was represented by counsel. (Doc. No. 118.) This order follows.

## II.   LEGAL STANDARD

Under Section 2255, a petitioner is entitled to relief if the sentence (1) was imposed in violation of the Constitution or the laws of the United States, (2) was given by a court without jurisdiction to do so, (3) was in excess of the maximum sentence authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Speelman*, 431 F.3d 1226, 1230 n.2 (9th Cir. 2005). To warrant relief, a movant must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

Here, Green alleges his sentence was imposed in violation of his Sixth Amendment right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 688

(1984); *United States v. Alferahin*, 433 F.3d 1148, 1160–61 (9th Cir. 2006).

## III.  DISCUSSION

Green brings a Section 2255 Petition centered solely on a single claim of ineffective assistance of counsel. (Doc. No. 61.) Specifically, Green alleges his counsel was ineffective during the plea negotiation process when counsel "coerced" him into taking a plea, and provided erroneous advice based on an inaccurate interpretation of the facts relevant to Green's criminal case. (*Id.* at 4.)

The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). In a claim of ineffective assistance of counsel, the petitioner must meet the *Strickland* test by showing that (1) under an objective standard, "counsel's assistance was not within the range of competence demanded of counsel in criminal cases" and (2) the petitioner suffered actual prejudice because of this incompetence. *See Lambert v. Blodgett*, 393 F.3d 943, 979–80 (9th Cir. 2004). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

### 1.  First *Strickland* Prong—Deficient Performance

The Court will first address the "deficient performance" *Strickland* prong. Green's primary argument regarding his counsel's purported deficient performance is that he was coerced into accepting the plea deal. (Doc. No. 61 at 19.) Specifically, Green avers his counsel advised him to accept the plea, or else face the possibility that he would never be released from prison. (*Id.*) Furthermore, Green argues that counsel erroneously interpreted the slang term "China" to mean fentanyl instead of heroin. (*Id.*)

With respect to the first *Strickland* factor, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. This involves proving "that counsel's performance was deficient," by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

3

guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Iaea v. Sunnn*, 800 F.2d 861, 864 (9th Cir. 1986). Counsel's performance is deficient when it is unreasonable, or not "within the range of competence demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. There is a "strong presumption" that trial counsel's conduct and strategy falls "within the wide range of reasonable professional assistance." *Id.* To establish that his counsel's conduct was unconstitutionally substandard, a Section 2255 petitioner must establish that no competent counsel would have acted as his counsel acted, i.e., that his counsel's acts were unreasonable. *United States v. Fredman*, 390 F.3d 1153, 1156 (9th Cir. 2004); *United States v. Ferreira–Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1996) ("Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation."); *Johnson v. Alabama*, 256 F.3d 1156, 1176–77 (11th Cir. 2001). It is the petitioner's burden to provide the Court with sufficient evidence from which the Court can conclude his counsel's performance was unconstitutionally ineffective. *Id.*

Green's contention that he was coerced into entering a guilty plea is unsupported by the evidence and fails for several reasons. A guilty plea is coerced where a defendant is "induced by promises or threats which deprive [the plea] of the nature of a voluntary act." *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986) (quotation marks and citation omitted). Green appears to claim that he was pressured into taking the plea deal because (1) counsel advised Green he could be facing life in prison, and (2) the term "China" was misinterpreted by counsel to mean fentanyl instead of heroin. (Doc. No. 61 at 19.) At the evidentiary hearing, Green also departed from his original claims in his Section 2255 Petition by adding that he did not receive adequate discovery for review before deciding to enter his guilty plea. (Doc. No. 121 at 2:4–6.) The Court will address each argument in turn.

//

//

### a)    Green's Claim That He Was Coerced Into Accepting the Plea Agreement

First, Green asserts that he was essentially "threatened" and "coerced" into accepting the Plea Agreement because counsel advised Green to plead guilty or else he would "not ever get out of prison." (Doc. No. 61 at 19.) The evidence shows the contrary. First, at the evidentiary hearing, the question was posed to Ms. Barros: "Did you tell Mr. Green that if he went to trial, there was a good chance he would spend the rest of his life in prison?" In response to this question, Ms. Barros answered "[n]o." (Doc. No. 121 at 6:5–7.) In weighing Green's evidence and Ms. Barros's testimony, the Court notes that Green's self-serving statements at the evidentiary hearing were directly contradictory to Green's earlier statements in open court during his Plea Hearing. For example, Green testified at the evidentiary hearing that he was pressured into taking the plea deal, (*Id.* at 2:13–17), while at the prior Plea Hearing, Green declared, under oath, that he was not threatened or coerced by anyone into pleading guilty. (Doc. No. 73 at 8.) By contrast, Ms. Barros's testimony was not impeached at the evidentiary hearing. Thus, on balance, the Court accepts Ms. Barros's unimpeached testimony that she did not threaten or coerce Green into entering a guilty plea. (Doc. No. 121 at 5:7–11) (answering "no" to the questions of "when you sat down to review the plea agreement with him, did you make any threats to him?" and "[d]id you in any way coerce him into accepting this plea?").

Moreover, the Court is also mindful that the charge in the initial Information, for the knowing and intentional distribution of a mixture and substance containing fentanyl, which resulted in death, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), carried a mandatory minimum sentence of twenty years with a possibility of life in prison. Therefore, any statement by counsel regarding the length of the possible sentence would not indicate a threat or deficient performance. Rather, advising and counseling clients as to the possible sentence of an offense is required of any competent criminal defense attorney. Here, not only did counsel adequately advise Green as to the law regarding his possible sentence, but counsel was also able to negotiate a Plea Agreement that removed the twenty-year

18-CR-2249-AJB

mandatory minimum attached to the distribution of fentanyl, resulting in death count. This result does not demonstrate incompetence but instead vigorous and effective advocacy on Green's behalf.

### b) Green's Claim That Counsel Erroneously Interpreted the Term "China"

Second, Green contends that he would not have accepted the Plea Agreement if his attorneys did not erroneously advise him that the term "China" meant a substance containing fentanyl. (Doc. No. 61 at 19.) This argument is also lacking in merit and does not show deficient performance. At the evidentiary hearing, Green testified that he had reviewed the Complaint against him, which included a definition of "China." (Doc. No. 121 at 2:22–3:1.) The definition in the Complaint explained that the Government understood "China" to mean a "street slang for a pure form of heroin containing fentanyl." (Doc. No. 1 at 4 n.i.) This definition in the Complaint is at odds with Green's claim in his Section 2255 Petition regarding the definition of "China." Green now claims that he understood "China" to mean heroin. Yet, there is no meaningful evidence in the record that establishes Green challenged this definition during the plea negotiation process after reviewing the Complaint, or that Green insisted upon proceeding to trial based on this fact.

Furthermore, as revealed during the evidentiary hearing, Green's counsel conducted an extensive investigation, which spanned the length of six months in an effort to pursue every last lead on Green's behalf. (*Id.* at 5:17–24.) In fact, Ms. Barros testified that at minimum, 140 total hours were spent on Green's criminal case. (*Id.* at 4:9–13.) Also telling, the record reflects that defense counsel reviewed all available discovery, probed into possible third-party culpability, requested more information from the Government when they believed the evidence incomplete, and waited for the autopsy and toxicology reports before the Plea Agreement was entered into. (*Id.*) Indeed, these six months provided both counsel and Green ample time to fully understand, and agree, on the term "China." What's more, it was not until after it was confirmed that there were traces of heroin in the decedent's urine that counsel made the determination that a guilty plea was the appropriate

manner of proceeding. (*Id.* at 5:17–24.) Thus, the record is devoid of any evidence suggesting shortcomings of Green's counsel with regard to the term "China." To the contrary, the evidence shows that counsel zealously represented Green at every stage of the proceedings. Based on the evidence that was present, defense counsel had a reasonable basis to believe that Green would not prevail at trial.

### c) Green's Claim That He Was Denied the Opportunity to Review Discovery

Third, Green alleged for the first time at the evidentiary hearing that he did not receive physical copies of discovery in his case. Particularly, Green states that it was not until after he received his case file upon the conclusion of the case that he became aware of discovery he had not had time to review. (*Id.* at 3:20–4:3.) As a preliminary matter, the Court need not consider new allegations or arguments not included in Green's Section 2255 Petition. *See Alvarado v. FedEx Corp.*, No. C 04–00098 SI, 2006 WL 644875, at *1 (N.D. Cal. Mar. 13, 2006). But even if it did, the Court does not find that counsels' decision to withhold physical copies of the discovery from Green unreasonable. Indeed, counsel was ordered by the Court to keep custody of the physical copies of discovery. (Doc. No. 121 at 2:5–7.) Thus, the fact that counsel did not provide Green physical copies of discovery did not make counsel's actions deficient. It is not unusual for counsel to decline to provide defendants copies of discovery especially if the requested documents come under the purview of a protective order. *See Thomas v. United States*, No. CR120052302PHXDGC, 2021 WL 2105611, at *5 (D. Ariz. May 25, 2021) (noting that the court had ordered that all discovery pertaining to a certain issue remain in the custody of defense counsel).

Furthermore, Green does not point to any specific evidence that he claims he did not have access to. No argument is made that counsel failed to properly notify Green of exculpatory discovery. In fact, Ms. Barros testified at the evidentiary hearing that all discovery was summarized to Green in prison. (Doc. No. 121 at 4:22–5:1.) ("[A]ll of the printed . . . discovery I would have taken to the jail, and I would have reviewed with Mr. Green. The media discovery . . . I would have either summarized for Mr. Green or printed

excerpts of."). And as for any media evidence, counsel made arrangements to bring a laptop computer into the detention facility in which Green was housed so that Green can access the digital discovery. (*Id.* at 6:19–24.) Contrary to Green's assertions, the testimony shows that Ms. Barros was meticulous in spending time with Green in reviewing the discovery that was available. Thus, the Court finds no shortcomings as it relates to counsel's actions regarding discovery.

### d) Green Voluntarily, Knowingly, and Intelligently Entered into the Plea Agreement

Finally, Green points to no evidence demonstrating that his agreement to enter into the plea was not voluntary, knowing, or intelligent. While Green asserts that counsel coerced him to plead guilty, he provides no explanation as to how such coercion was accomplished. He does not describe any actual threats made by counsel or other conduct that would support his conclusory statement that he was coerced. Given the lengthy and detailed plea colloquy conducted by Magistrate Judge Karen S. Crawford, which expressly included a question as to whether Green had any complaint or dissatisfaction with the legal services he had received, (Doc. No. 73 at 8), and Green's failure to claim any type of coercion at the time of the plea, this aspect of Green's claim is deficient on its face. Indeed, the Court specifically asked Green during his Plea Hearing whether his plea was the result of any threats:

> THE COURT: And are you satisfied with the services that your lawyer has provided to you?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Did anyone threaten you to get you to plead guilty today?
> THE DEFENDANT: No, Your Honor.
> THE COURT: Anybody promise you anything other than what is set forth in these two documents in exchange for your guilty plea?
> THE DEFENDANT: No, Your Honor.
> THE COURT: And considering the consequences you face, do you still wish to enter a guilty plea before me this morning?
> THE DEFENDANT: Yes.

(Doc. No. 73 at 8–9.)

The only evidence that Green brings forth as to his attorneys' alleged coercion is his own self-serving testimony. There is a significant amount of contrary evidence in the record. The transcript of the colloquy shows that the Court carefully explained the rights that Green was agreeing to waive, and that Green understood the nature of the waiver. (*Id.* at 3–4 (advising Green of his constitutional rights, including the right to persist in a plea of not guilty, the right to a speedy and public trial or the right to be tried by a judge, the right to an attorney, and the right to confront and cross-examine any witnesses)).

Further, at his Plea Hearing, Green affirmed specifically that he had reviewed his Plea Agreement with his counsel, and that he had no further questions about it:

> THE COURT: And do your initials and signature indicate that you reviewed both documents in their entirety, including the provisions on waiver of appeal and collateral attack, set forth in the plea agreement, that you discussed them with your lawyer and that you understood them before signing them?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you have any questions about either document?
> THE DEFENDANT: Not at this time, no.

(Doc. No. 73 at 10.)

There is a "strong presumption" of truthfulness afforded to "solemn declarations made in open court." *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986). Given Green's clear and unequivocal statements during his Plea Hearing, the Court finds that Green's allegations in his Section 2255 Petition directly contradict his statements in open court. *See Kingsbury v. United States*, 783 F. App'x 680 (9th Cir.), cert. denied, 140 S. Ct. 668 (2019) ("Defendant failed to establish a claim of ineffective assistance of counsel for allegedly feeling pressured to plead guilty by his attorney. . . . [D]efendant's prior sworn statements directly contradicted the allegations presented in the motion to vacate conviction petition").

At the evidentiary hearing, Green called into question his ability to enter into a plea knowingly and intelligently. Green highlights that even defense counsel decided to order a psychological evaluation during the criminal prosecution of his case. (Doc. No. 121 at 7:3–9.) But the fact that defense counsel ordered a psychological evaluation on Green during

9

his criminal proceeding is unremarkable. For example, defense counsel could have ordered a psychological evaluation for a multitude of reasons, including to determine possible avenues of mitigation, or for use for sentencing purposes. The Court also notes that despite the psychological evaluation, there was no finding of incompetence precluding Green from proceeding with the case. This was affirmed by Green's own testimony where he testified that around April 4, 2019, he was in a "good state of mind." (*Id.* at 3:9–13.)

In light of the substantial record on this issue, the Court finds Green's claim that he was coerced into signing the Plea Agreement to be without merit. *See Doe v. Woodford*, 508 F.3d 563, 572 (9th Cir. 2007) ("We have no doubt that the decision to plead guilty is a difficult one for many Petitioners, but the fact that one struggles with the decision, and might later even come to regret it, does not render it coerced."). Green has not provided any evidence or further argument to rebut any of these facts. Under the first *Strickland* prong, counsel's assistance was well within the range of competence demanded of counsel in criminal cases. There is no evidence otherwise. As such, the Court concludes that this ground does not constitute an adequate basis to find counsel ineffective.

## 2. Second *Strickland* Prong—Prejudice

Although the Court concludes Green has not demonstrated that counsel was ineffective, the Court will nevertheless briefly address the "prejudice" *Strickland* factor. As to this factor, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58–59. With regard to the prejudice prong of the *Strickland* analysis, the probability of prejudice may not be based merely upon conjecture or speculation. *See Mickens v. Taylor*, 122 S.Ct. 1237, 1246 (2002) (Kennedy, J. concurrence) (regarding speculation as having no place in a *Strickland* analysis).

Green claims that "absent counsel's erroneous advice, the outcome of the process would have been different." (Doc. No. 61 at 20.) Specifically, Green contends there was "sufficient evidence" to hold Green accountable for "the crime of the use of [a]

10

communication facility in committing a drug offense (phone count)" along with a distribution of heroin count. (*Id.*) Green points out that these counts would have carried a lighter sentence than the sentence that was imposed on Green. However, Green does not adequately explain how counsel's actions deprived him of the ability to be charged with a "phone count." There is simply no evidence that the United States was ever going to prosecute Green under 21 U.S.C. § 843(b) for the "phone count." The decision to charge defendants with specific crimes rests with the United States—not defense counsel. As such, the Court holds that this basis does not allow for a finding of prejudice.

Next, Green argues for the first time at the evidentiary hearing that he was denied his right to trial. (Doc. No. 121.) Green contends he was prejudiced because but for his attorneys' errors, he would have not pled guilty. (*Id.*) But the Court does not find that there is sufficient prejudice because the law for distribution offenses only requires that the Government prove that Green understood the substance he was distributing to be fentanyl *or some other prohibited substance*. *See* 21 U.S.C. § 841 (a)(1). Assuming that the Court accepted Green's contention that he did not know that the substance he sold was fentanyl, Green nevertheless admitted on multiple occasions to selling heroin, a controlled substance. (Doc. No. 48-1.) Therefore, regardless of whether Green understood that the substance he sold was heroin or fentanyl, Green would be criminally liable for the distribution of an illicit drug. And as noted above, it was not until defense counsel confirmed that there were traces of heroin in the decedent's urine that counsel made the determination that a guilty plea was the appropriate manner of proceeding. The evidence is also crystal clear that Green accepted responsibility—before and after sentencing—to the distribution of a controlled substance. (*See* Doc. No. 39 at 4.) Accordingly, the Court does not find that Green suffered prejudice as a result of counsel's litigation strategy.

In sum, Green requests the Court vacate and set aside his guilty plea and sentence, and set this case for trial because he is innocent of the charged offense. However, his requested relief is not within the confines of, or contemplated by, Section 2255. This matter is not a direct appeal, and factual innocence is not at issue for the purpose of this Section

11

2255 Petition.

## IV. CONCLUSION

After careful consideration of the record, this Court finds that there is no evidence supporting Green's claim of ineffective assistance of counsel beyond his own self-serving statements. The only evidence supporting Green's claims is his own post-hoc statements which directly contradict his in-court statements. Nothing in the record shows that Green's representation fell below the objective standard of reasonableness. Because the record refutes Green's allegations and otherwise precludes habeas relief, Petitioner's motion is **DENIED**. (Doc. No. 61.)

In addition, the Court denies Green a certificate of appealability. A petitioner is required to obtain a certificate of appealability in order to appeal a decision denying a motion under 28 U.S.C. § 2255. A court may issue a certificate of appealability where the petitioner has made a "substantial showing of the denial of a constitutional right," and reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). This Court finds that Green has not made the necessary showing. A certificate of appealability is therefore **DENIED**.

Finally, in light of this Court's conclusion, the Court sets a status hearing **of July 19, 2021 at 9:00 AM** to further address custodial and other remaining issues.


**IT IS SO ORDERED.**

Dated: July 6, 2021

Hon. Anthony J. Battaglia
United States District Judge

12

18-CR-2249-AJB